(Summit County Court of Common Pleas.)

CHARLES R. GRANT *v.* CORNELIUS A. BROUSE ET AL.

1. When a firm engaged in mercantile business enters into a contract with a board of education, thereby selling certain goods to such board, and one of the members of said firm is also a member of said board, such contract comes within the prohibition of section 3974, Revised Statutes, and is void.
2. Any resident taxpayer of such school district may maintain an action to restrain such board and its treasurer from paying anything on such contract.

(Decided September, 1894.)

On general demurrer to petition.

VORIS, J.

This is an action brought by the plaintiff, Grant, who alleges he is a resident tax-payer of the city of Akron, which city constitutes a school district of the first class, against Cornelius A. Brouse, C. A. Brouse & Co., The Board of Education of said city, and Frank A. Seiberling, treasurer of the board, charging that said Cornelius A. Brouse is and was, at the time of committing the wrongs complained of, a member of said board, and also a member of the firm of C. A. Brouse & Co., a partnership doing a mercantile business, as such firm; that on the 23rd day of January, 1894, said firm undertook to sell to said board of education, goods and merchandise to the amount of $28.09, and presented a bill therefor to said board of education, demanding payment therefor, the said Cornelius A. Brouse then being both a member of said firm and said school board; that said Cornelius A. Brouse then was and is directly interested in said contract of sale; that said sale is in contravention of the laws of Ohio, contrary to public morals, and of evil example, and void; nevertheless, the board of education has allowed said bill, and caused an order to be drawn upon said treasurer directing him to pay the amount thereof, which he will do, unless prevented by this court. Wherefore he asks that defendants be perpetually enjoined from paying or collecting said bill.

Section 2974, Rev. Stat., expressly provides that "no member of a board shall have an pecuniary interest, either direct or indirect, in any contract of the board."

The real question arises, are the acts complained of, prohibited by this statute? To us, it appears plain that the statute was intended to, and does embrace in its prohibition, the alleged transaction. "No member of a board shall have any pecuniary interest in any contract of the board" seems so plain as not to need construction. The fact that Cornelius A. Brouse was, at this time, a member of the firm of C. A. Brouse & Co., necessarily implies that he had a pecuniary interest in the contract of sale made by the firm with the board, and being so, it was a contract the board was prohibited from making, and therefore one it had no right to make; nor did it have any right to allow the bill of the firm, or draw an order for its payment on the treasurer of the board.

That the board can allow a bill, and order its treasurer to pay the same upon a contract prohibited by express provision of the statute, is palpably absurd, "and of evil example." It is to divert the public funds of the school district from the purposes for which they are devoted by statute. And we think every resident taxpayer of the district is substantially interested in having them wholly devoted to the uses for which they are raised, and that no board shall, by any attempted official act, divert them to prohibited uses.

Does the plaintiff have a standing in court, enabling him to invoke

its equitable jurisdiction and prevent the payment of this bill? The Supreme Court in *Weir* v. *Day*, 35 Ohio St. 143, announces this principle: "That boards of education are vested with the title to the property of their respective districts, in trust, for the use of public schools, and the appropriation of such property to any other use, is unauthorized * * * and such appropriation may be restrained at the suit of a resident tax-payer of the district." Says Judge McIvaine, who announced the opinion of the court: "As a resident taxpayer in the district, and hence a quasi-corporator, it is his legal right to have the corporate property used solely for corporate purposes and any diversion of the property to other uses is an injury to him in law." It is true that this case arose upon the diversion of a public school-house to the purposes of a private select school, but it cannot be contended that the principle of that case does not as well apply to the diversion of the public school moneys. We think the plaintiff does thereby sustain such an injury, as brings him within the jurisdiction of the court for the relief sought.

In taking this view of the matter, we are not undertaking to censure anybody, because we believe that in this transaction, the board believed that it was discharging a public duty beneficially to the public; that is, it supposed that this was a more advantageous course to take than to obey the law. I have no doubt that the member of the board, who sold these articles, undertook to make a favorable arrangement for the public. Nothing to the contrary is asserted, and it is urged in fact, by the defendants, as a reason why this court should not interfere with its jurisdiction, that no pecuniary injury in fact resulted.

But we cannot look upon it in this light. The dollar and cent advantage is the lowest order of consideration that can be urged, when a public wrong, a vicious public example is encouraged under high official sanction; the example, the public wrong, the prostitution of public virtue is vastly more than mere matter of dollars and cents. The law was made in the interests of sound public policy, and while in some cases it may appear to be more advantageous to ignore than to obey the law, yet we think no public officer can violate a direct provision of law, directing the performance of his duty, or prohibiting certain acts, and have his conduct judicially approved. And where the matter comes before the court, it ought to carefully see to it, that public policy is upheld. I know of no better way of preserving the virtue of the public, than to have its officers understand and act as if they were public servants, always recognizing that official position constitutes a public trust that must be sacredly carried out. It does not appear in this case that the trust imposed upon the board of education has been carried out, either in spirit, or within the express letter of the law, but directly to the contrary. We think there is enough contained in this petition to raise the equities that the pleader has invoked. Entertaining that view, we will overrule the demurrer.

*C. R. Grant*, for plaintiff.
*Jas. Poulson*, for defendants.